Citation Nr: 1513854 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 09-14 311 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to an initial evaluation in excess of 10 percent for right knee retropatellar pain syndrome.

2. Entitlement to an initial compensable evaluation for lumbosacral strain with lumbar scoliosis prior to May 22, 2009 and in excess of 10 percent thereafter.

3. Entitlement to an initial evaluation in excess of 10 percent for residuals of a remote crush injury/left ankle strain.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

Michael J. Adams, Associate Counsel
INTRODUCTION

The Veteran served on active duty from July 2003 to February 2008. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a March 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. During the pendency of this appeal, in June 2009 and August 2014 rating decisions, the RO granted a 10 percent rating for the Veteran's lumbosacral strain with lumbar scoliosis, effective from May 22, 2009, and initial 10 percent ratings for the Veteran's right knee and left ankle disabilities. Because these increased ratings do not represent a grant of the maximum benefits allowable under the VA Schedule for Rating Disabilities, the Veteran's claims remain in appellate status. AB v. Brown, 6 Vet. App. 35, 38 (1993) (holding that a grant of a higher rating during the course of an appeal, but less than the maximum benefits allowable, does not abrogate the appeal).

In his April 2009 substantive appeal, the Veteran requested a Board hearing; however, he did not report for a hearing scheduled in August 2011 and no good cause was shown; therefore, the hearing request is deemed withdrawn. 38 U.S.C.A. § 20 .704 (d) (2014).

The issue of entitlement to an initial compensable evaluation for lumbosacral strain with lumbar scoliosis prior to May 22, 2009 and in excess of 10 percent thereafter is REMANDED to the RO/AMC and is addressed in the REMAND portion of the decision below.


FINDINGS OF FACT

1. Throughout the period on appeal, the Veteran's right knee symptoms included painful motion, flare-ups, limitation of flexion to no more than 130 degrees, and limitation of extension to no more than 0 degrees.

2. During the period on appeal, the Veteran's residuals of left ankle crush have been shown to be productive of no more than moderate limited motion.


CONCLUSIONS OF LAW

1. For the entire period on appeal, the criteria for an initial evaluation in excess of 10 percent for the right knee have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.71a, Diagnostic Code 5003, 5257, 5260 (2014).

2. For the entire period on appeal, the criteria for an initial evaluation in excess of 10 percent for service-connected residuals of left ankle crush have not been met. 38 U.S.C.A. §§ 1155, 5107, 7104 (West 2014); 38 C.F.R. §§ 4.1 , 4.2, 4.7, 4.10, 4.71, Diagnostic Codes 5270-74 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VCAA Duty to Notify and Assist

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). A VA letter issued in December 2007 satisfied the duty to notify provisions with respect to the increased rating claims and notified the Veteran of the regulations pertinent to the establishment of an effective date and disability rating.

As to VA's duty to assist the Veteran with his claims, the Board finds that all necessary development has been accomplished and therefore appellate review may proceed without prejudice to the Veteran. See generally 38 C.F.R. § 3.159(c). The record in this case includes service treatment records, VA treatment records, private treatment records, and lay evidence.

Additionally, the Veteran's claim was previously remanded by the Board in March 2014 to obtain outstanding VA treatment records and to provide the Veteran with VA examinations for his knee, back, and ankle. Review of the claims file reflects that VA treatment records dating back to 2011 had been added. Further, VA examinations were conducted in May 2014 that are adequate for the purpose of adjudicating the Veteran's claims. Specifically, the examination report reflects that diagnoses and opinions which are congruent with the other evidence of record were rendered following a physical examination of the Veteran and a review of the record. All offered opinions are accompanied by a complete rationale. The examiner also identified the pertinent symptoms outlined in the applicable rating criteria. Moreover, neither the Veteran nor his representative have challenged the adequacy of the examinations. 38 C.F.R. § 3.159(c) (4); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). In light of above, the Board's May 2014 remand directives have been substantially completed. Stegall, 11 Vet. App. 268 (1998); D'Aries, 22 Vet. App. 97 (2008); Dyment, 13 Vet. App. at 146-47 (1999).

As VA satisfied its duties to notify and assist the Veteran, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. §§ 5103(a), 5103A, or 38 C.F.R. § 3.159.

II. Increased Ratings - General

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4 (2014). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505, 510 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45 (2014). VA must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss in light of 38 C.F.R. § 4.40, which requires the VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995).

II. Increased Rating - Right knee

The Veteran's limitation of right knee flexion with DJD has been rated as 10 percent disabling under Diagnostic Code 5024. The Veteran contends that a higher rating is warranted.

Initially, the evidence does not reflect, and the Veteran does not contest, that he experienced any ankylosis, locking, removal, or dislocation of semilunar cartilage, subluxation or instability, or impairment of the tibia or fibula. As such, Diagnostic Codes 5256, 5257, 5258, 5259, and 5262 are not applicable.

Painful motion of a major joint or groups caused by degenerative arthritis, where the arthritis is established by X-ray, is also deemed to be limited motion and entitled to a minimum 10 percent rating, per joint, combined under Diagnostic Code 5003, even though there is no actual limitation of motion. See 38 C.F.R. §§ 4.40, 4.59, 4.71a, Diagnostic Codes 5003, 5024; VAOPGCPREC 09-98 (August 14, 1998), citing Lichtenfels v. Derwinski, 1 Vet. App. 484 (1991).

Diagnostic Code 5260 provides the rating criteria for limitation of flexion of the leg. Under this diagnostic code provision, flexion that is limited to 60 degrees is noncompensable; flexion that is limited to 45 degrees warrants a 10 percent disability rating; flexion that is limited to 30 degrees warrants a 20 percent disability rating; and flexion that is limited to 15 degrees warrants a 30 percent disability rating. A 30 percent disability rating is the highest available under Diagnostic Code 5260. 38 C.F.R. § 4.71a, Diagnostic Code 5260 (2014). Normal range of motion for the knee is flexion to 140 degrees and extension to zero degrees. 38 C.F.R. § 4.71, Plate II (2014).

Under Diagnostic Code 5261, extension limited to 5 degrees warrants a noncomepnsable rating, extension limited to 10 degrees warrants a 10 percent disability rating, extension limited to 15 degrees warrants a 20 percent disability rating, extension limited to 20 degrees warrants a 30 percent disability rating, extension limited to 30 degrees deserves a 40 percent disability rating, and extension limited to 45 degrees deserves a 50 percent disability rating. 38 C.F.R. § 4.71a.

The pertinent evidence consists of the Veteran's lay statements, VA treatment records, and VA examination reports. In several lay statements, the Veteran has reported flare-ups and asserted that his right knee is unstable and gives way frequently. Further, VA treatment reports reflect ongoing treatment for right knee pain and that the Veteran occasionally wears a knee brace.

The Veteran underwent a VA examination in May 2009. The associated report reflects that the Veteran's right knee was painful and he experienced flare-ups one to two times per week with prolonged walking or standing. No additional functional impairment was noted during flare-ups. No assistive devices were reported to be used. No subluxation or instability was observed. Range of motion testing revealed flexion to 135 degrees with no additional limitation after repetition. The Veteran was able to extend to 0 degrees. Examination also did not reveal any weakness or tenderness.

A second VA examination was conducted in May 2014. The report reflects that the Veteran complained of pain and popping but denied flare-ups. Range of motion testing revealed flexion to 130 degrees and extension to 0 degrees without any additional limitation after repetition. No pain or tenderness to palpitation was observed. Strength and reflexes were normal bilaterally and no instability or subluxation was observed. The Veteran did not report wearing a brace. Lastly, the examiner reported that there was no functional loss due to flare-ups or incoordination, fatigue, weakness, or loss of locomotion.

Based on the evidence described, the Board finds that an initial disability rating in excess of 10 percent is not warranted for the Veteran's right knee disability. In order to warrant a 20 percent rating under Diagnostic Code 5260 or 5261, the Veteran's right knee flexion must be limited to 30 degrees or 15 degrees of extension. At no time during the period on appeal does the evidence reflect that the Veteran had flexion limited to less than 130 degrees or extension to more than 0 degrees. Such findings do not warrant a compensable rating under Diagnostic Code 5260 pr 5261. In short, there is no credible evidence that the Veteran's right knee flexion was limited to more than 130 degrees of flexion or more than 0 degrees of extension at any point during the period on appeal. As such, a rating in excess of 10 percent is not warranted.

In reaching the above conclusions, the Board has considered the Veteran's functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of the right knee joint under 38 C.F.R. §§ 4.40 and 4.45. See also DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss contemplates the inability of the body to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance, and must be manifested by adequate evidence of disabling pathology, especially when it is due to pain. 38 C.F.R. § 4.40. The factors of disability affecting joints are reduction of normal excursion of movements in different planes, weakened movement, excess fatigability, swelling and pain on movement. 38 C.F.R. § 4.45. The Veteran has complained about pain that has intensified during the period on appeal, and he is competent to describe this pain. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). His statements regarding painful motion are also supported by the medical evidence. However, pain alone is not a disability. Mitchell v. Shinseki, 25 Vet. App. 32, 36-38 (2011). Rather, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Id. at 43; see 38 C.F.R. § 4.40.

In this case, the weight of the lay and medical evidence demonstrates that the Veteran does not have such disabling pain or functional impairment resulting from his limitation of right knee flexion to warrant a higher rating for right knee restrictions under Diagnostic Codes 5260 or 5261. Specifically, the evidence does not demonstrate that the Veteran's painful motion or limitation of motion of the right knee, resulted in a functional loss that more closely approximated an inability to flex his knee beyond 30 degrees. DeLuca, 8 Vet. App. 202; 38 C.F.R. § 4.71a, Diagnostic Codes 5260, 5261. It is notable that the Veteran reported experiencing flare-ups that resulted in limitation of weight bearing activities. However, repetition testing did not result in significant additional limitation of motion. Further, the Veteran has not reported any incoordination or functional impairment caused by incoordination during flare-ups and the May 2014 examiner specifically noted no additional functional loss during flare-ups. Moreover, examination revealed normal strength and reflexes of the right leg. As described above, the consistent medical evidence and physical findings indicate that it is unlikely that the Veteran experienced flare-ups productive of such severe impairment as to more closely approximate limitation of flexion to 30 degrees or extension to 15 degrees. Therefore, a higher rating for limitation of right knee flexion or extension is not warranted.

Finally, as the preponderance of the evidence is against the claim for a rating in excess of that already assigned, the doctrine of reasonable doubt is not for application. Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


III. Increased Rating - Left ankle

The Veteran's left ankle disability is rated under Diagnostic Code 5271 for limited motion of the ankle. Under Diagnostic Code 5271, moderate limitation of motion warrants a 10 percent disability rating and marked limitation of motion warrants a 20 percent disability rating. 38 C.F.R. § 4.71a. Normal range of motion of the ankle is dorsiflexion to 20 degrees and plantar flexion to 45 degrees. 38 C.F.R. § 4.71a, Plate II.

Initially, the medical evidence does not demonstrate, and the Veteran has not asserted, that his left ankle disability is productive of ankylosis, malunion, or astragalectomy. As such, Diagnostic Codes 5270, 5272, 5273, and 5274 are not applicable and will not be discussed further.

The Veteran has asserted that he is entitled to an evaluation in excess of 10 percent for his left ankle disability.

The probative and competent medical evidence from this period reflects that the Veteran experienced painful motion of the ankle along with swelling. 
In May 2009 the Veteran underwent a VA examination. The report reveals that the Veteran reported flare-ups that resulted in additional limitation of motion. Range of motion testing revealed dorsiflexion to 20 degrees and plantar flexion to 45 degrees. No additional limitation of motion was observed after repetition. No varus or valgus angulation of the ankle was noted.

A second VA examination was conducted in May 2014. The report reflects dorsiflexion to 15 degrees and plantar flexion to 35 degrees with no additional limitation after repetition. The Veteran denied flare-ups. Examination revealed left ankle tenderness but no ankylosis, astragalectomy, or instability. X-rays taken at that time were normal. The examiner opined that the Veteran's left ankle was not limited by flare-ups or Deluca factors such as incoordination, weakness, fatigue, or reduced locomotion. The examiner also classified the Veteran's left ankle strain as mild to moderate.

Based on the evidence, the Board does not find that the Veteran's left ankle disability more closely approximated a rating in excess of 10 percent for the period on appeal. As described, the evidence reflects that the Veteran at worst had dorsiflexion to 15 degrees and plantar flexion to 35 degrees during this period. There is no evidence of ankylosis, malunion, or astragalectomy. Further, the May 2014 VA examination report reflects that the Veteran's left ankle strain is mild to moderate in severity with no additional functional limitation during flare-ups. As such, a higher rating is not warranted under Diagnostic Code 5071.

The Board has also considered whether the Veteran's left ankle disability resulted in a level of functional loss greater than that already contemplated by the assigned rating for this period. DeLuca v. Brown, 8 Vet. App. 202, 206 (1995); 38 C.F.R. §§ 4.40, 4.45. The Veteran has reported that his ankle disability causes his great pain and swells up. The evidence reflects that the Veteran has consistently reported pain and experienced some limitation of motion. In addition, the May 2014 VA examiner found the functional impairment of the Veteran's ankle disability was mild to moderately severe. While the Veteran reported flare-ups at the May 2009 examination, he denied them at the May 2014 examination. Further, the May 2014 examiner opined that the Veteran's flare-ups did not result in additional functional limitation. The Board finds this impairment does not rise to the level of functional loss greater than that already contemplated in the disability rating assigned. As described, under Diagnostic Code 5071, the criteria for a 20 percent rating requires marked limitation of motion. The medical evidence reflects that the Veteran's range of motion was good and was only mildly or moderately limited at the 2014 VA examination. Further, range of motion testing did not decrease after repetitive testing. Based on the medical evidence and the range of motion numbers, particularly those recorded at the VA examinations, the Veteran does not have functional limitation more closely approximating marked limitation of motion of the ankle.

IV. Extraschedular Consideration

The Board has considered whether referral for an extraschedular evaluation is warranted. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2014). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step - a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's right knee and left ankle, disabilities are specifically contemplated by the schedular rating criteria. The Veteran's right knee and left ankle disabilities have been manifested by painful motion, flare-ups, and noncompensable limitation of motion. The schedular rating criteria specifically contemplate ratings based on this symptomatology. 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5237, 5260, 5261, 5271. In this case, comparing the Veteran's disability level and the symptoms listed in the Rating Schedule, the degrees of disability throughout the entire period under consideration are contemplated by the Rating Schedule and the assigned ratings are, therefore, adequate.

Additionally, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the appellant for a disability that can be attributed only to the combined effect of multiple conditions.

Finally, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is part of an increased rating claim when such claim is expressly raised by a veteran or reasonably raised by the record. In this case, the Veteran has not asserted that he is unemployable due to his service-connected disabilities. Additionally, there is also no medical evidence that he is unemployable due to his knee, ankle, or back disabilities. Thus, the Board finds that Rice is inapplicable because the Veteran has not asserted that he is unemployable due to his service-connected disabilities.



ORDER

Entitlement to an initial evaluation in excess of 10 percent for right knee retropatellar pain syndrome is denied.

Entitlement to an initial evaluation in excess of 10 percent for residuals of a remote crush injury/left ankle strain is denied.


REMAND

Subsequent to the most recent Supplemental Statement of the Case (SSOC) in August 2014, additional VA medical records were added to the file that include treatment for the low back disability in January 2015. Therefore a new SSOC is required. See 38 C.F.R. § 19.31 (2014). There is no basis for a waiver of RO consideration under 38 C.F.R. § 20.1304 because this new evidence was not submitted by the appellant. Therefore, the issue of entitlement to an increased rating for a low back disability must be remanded for the issuance of an SSOC. The left ankle and right knee disabilities are adjudicated above, because the new evidence submitted after the August 2014 SSOC does not address the left ankle or right knee.

Readjudicate the issue of entitlement to an increased rating for a low back disability and issue an SSOC that addresses the new evidence added to the file subsequent to August 2014. Once the claim has been readjudicated, if the benefit remains denied, provide the Veteran and his representative the opportunity to respond and then return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs