Rose M. LICHTENFELS, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–705.

United States Court of Veterans Appeals.

Submitted July 8, 1991.

Decided Oct. 2, 1991.

Joseph A. Violante, Washington, D.C.,
was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J.
Mullen, Deputy Asst. Gen. Counsel, and
Deborah W. Singleton, Washington, D.C.,
were on the brief, for appellee.

Before KRAMER, IVERS and
STEINBERG, Associate Judges.

KRAMER, Associate Judge:

Appellant seeks reversal of a March 29, 1990, Board of Veterans' Appeals (BVA) decision denying her both service connection for degenerative arthritis in her right foot and a separate, rather than combined, service-connected rating for degenerative arthritis in her spine. Because all the evidence of record and the applicable statutory and regulatory provisions support appellant's appeal, we reverse and remand for proceedings consistent with this opinion.

## I.

### Factual Background

Prior to service, in 1971 and 1972, appellant fractured her right foot and right ankle, respectively. R. at 40–43, 47. From 1975 to July 1987, appellant served on active duty with the Air Force. R. at 10–13. Her induction examination revealed no abnormalities in any of her joints, inclusive of her feet and spine. *Id.* In addition, full recoveries from her pre-service right foot and ankle fractures were reported in a 1986 Air Force examination. R. at 40–43, 47.

During service, appellant incurred the following injuries to her right foot and ankle: On January 20, 1976, she sustained a mild sprain, with no significant swelling, to her right ankle. R. at 21. Appellant next injured her right foot on April 4, 1977. R. at 19–20. The injury resulted in no swelling, and the x-ray taken of the foot was negative. *Id.* On December 9, 1982, she twisted her right foot while running. R. at 24. As before, there was no swelling. The last in-service injury to appellant's right ankle occurred on August 10, 1986, occasioning only minor swelling. R. at 25.

On December 10, 1986, appellant, complaining of chronic pain in both knees, was examined by Air Force Dr. Jerrold G. Black who noted:

Swollen and painful joints refers to bilateral pain and degenerative joint disease in both knees. Diagnosed in 1986. Foot trouble refers to **diagnosis of arthritis** and elevated arch in **right foot.**

R. at 42 (emphasis added).

On March 16, 1987, appellant's diagnosis of degenerative joint disease (DJD) in both knees was confirmed by the United States Air Force Evaluation Board. R. at 49. In April 1987, the Air Force awarded appellant service connection and a 10–percent disability rating for DJD in each knee using Veterans' Administration (now Department of Veterans Affairs) (VA) Diagnostic Code (DC) 5003. R. at 33, 37; 38 C.F.R. § 4.71a, DC 5003 (1990). Appellant was discharged in July 1987. R. at 10–13.

On August 19, 1987, appellant applied to the VA for disability compensation for a number of conditions. R. at 29–31. Appellant underwent a VA examination on October 15, 1987, where, in relevant part, x-rays revealed that appellant had DJD in both knees, in the thoracic and lumbar regions of her spine, and in the first through the fifth interphalangeal joints of her right foot. R. at 62. With respect to appellant's back, Dr. Uma D. Sopori recorded:

[Appellant] usually has feeling of stiffness and aching over the lower back early in the morning with inactivity and [it] gets better as the activity and range of movements are increased.

. . . .

History of recurrent low back arthralgia [pain in joints] with no restriction of movements; no tenderness or muscle spasm.

R. at 59. Dr. Sopori also reported that appellant had pain in her right foot. *Id.*

As a result of this examination, the VA Regional Office (RO) on March 1, 1988, awarded appellant service-connected ratings for degenerative arthritis, but used DC 5010 (diagnostic code for traumatic arthritis) to do so:

DC 5010 Degenerative Arthritis right knee with painful motion and x-ray evidence of lumbosacral involvement 10–percent

DC 5010 Degenerative Arthritis left knee with painful motion 10–percent

R. at 76.

Appellant, contending that the RO should have given her separate ratings for the arthritis in her spine and for the arthritis in her right foot, filed a Notice of Disagreement with the RO and then appealed to the BVA. R. at 79, 90.

The BVA denied her appeal, stating in relevant part:

[O]bjective evaluation of the lumbar spine revealed a normal range of motion **without evidence of pain** or tenderness.

*Rose M. Lichtenfels*, BVA 91–36907, at 4 (Mar. 29, 1990) (emphasis added). In its denial, the BVA determined as findings of fact:

1. Clinical data of record clearly and unmistakably establishes the preservice existence of a right foot fracture.

2. The veteran's preservice right foot fracture **did not undergo an increase in the underlying pathology during service.**

3. Degenerative arthritis of the right knee and degenerative joint disease of the lumbar spine are manifested by radiographic findings of degenerative joint disease, with a full range of motion with pain and tenderness of the right knee, and a full range of motion **without pain** or tenderness of the lumbar spine without incapacitating exacerbations.

and concluded as a matter of law:

1. **Residuals of a fracture of the right foot clearly and unmistakably preexisted peacetime service; the presumption of soundness is rebutted.**

2. Residuals of a right foot fracture were not aggravated by peacetime service.

3. The schedular criteria for a rating in excess of 10 percent for degenerative arthritis of the right knee and degenerative joint disease of the lumbar spine have not been met.

*Id.* at 6–7 (emphasis added). Appellant subsequently appealed to this Court.

II.

Service Connection

■ Title 38 U.S.C. § 1111 (formerly § 311) provides:

For the purposes of section 310 [basic entitlement to service connection] of this title, every veteran shall be taken to have been in **sound condition** when examined, accepted, and enrolled for service, **except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment** and was not aggravated by such service.

(Emphasis added.) Title 38 C.F.R. § 3.304(b) (1990) further addresses this presumption and provides that "[o]nly such conditions as are recorded in examination reports are to be considered as noted." Under these provisions, a veteran is entitled to service connection for a disease present in service unless the disease was noted in an examination report at the time of entrance into service or clear and unmistakable evidence shows that the veteran's disease pre-existed service and was not aggravated thereby. In this case, appellant's entrance examination shows no evidence of DJD in her knees, spine, or foot nor is there *any* evidence that appellant had DJD prior to service.

■ In addition, 38 U.S.C. § 1112(a)(1) (formerly § 312(a)(1)) creates a presumption of service connection where "a chronic disease becom[es] manifest to a degree of 10 percent or more within one year from the date of separation from such service." Title 38 U.S.C. § 1101(3) (formerly § 301(3)) includes arthritis as such a chronic disease, and the VA has classified DJD as arthritis. 38 C.F.R. § 4.71a, Diagnostic Code 5003 (1990) (DC 5003). Appellant was discharged in July 1987 and diagnosed by the VA in October 1987 as having DJD in her knees, right foot, and lumbar and thoracic spine. Thus, regarding the right foot and thoracic spine, the presumption attaches. (Because the VA has already granted service connection for appellant's knees and lumbar spine, these conditions are not at

issue.) While 38 U.S.C. § 313(a) (1988) does permit this presumption to be rebutted by affirmative evidence, the BVA simply asserted that *residuals* of the right foot fracture pre-existed service and the presumption was rebutted. There is no evidence of record, however, that DJD was present prior to service and, thus, no support exists for the BVA's assertion. *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). In addition, while the BVA did not address the issue of the presumption as it relates to the thoracic spine, there, again, is no evidence in the record that DJD was present prior to service.

■ Lastly, with respect to the right foot, for injuries and diseases which preexisted service, 38 U.S.C. § 1153 (formerly 353) provides:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

The "natural progress of the disease" criterion contained in § 353 is amplified in 38 C.F.R. § 3.306(c) (1990):

> (c) *Peacetime service.* The specific finding requirement that an increase in disability is due to the natural progress of the condition will be met when the available evidence of a nature generally acceptable as competent shows that the increase in severity of a disease or injury or acceleration in progress was that normally to be expected by reason of the inherent character of the condition, aside from any extraneous or contributing cause or influence peculiar to military service. Consideration will be given to the circumstances, conditions, and hardships of service.

The natural progress of a disease must be shown by competent evidence which demonstrates that, regardless of any "contributing cause or influence peculiar to military service", the increase in the severity of the preservice condition resulted from the inherent evolution of the condition. Applied to the facts in this case, natural progress of the disease would defeat service connection for appellant's right foot DJD only where evidence demonstrates that appellant's pre-service fracture caused, without contributions from her in-service injuries, DJD in her right foot. Here, no such evidence of record exists. *See Colvin*, 1 Vet. App. at 174. Where the facts are uncontradicted, the Court, in applying the legal standards discussed above to such facts, concludes, as a matter of law, that appellant is entitled to service connection for degenerative arthritis of the right foot and the thoracic spine.

### III.

### Ratings

Title 38 C.F.R. § 4.71a, DC 5003 (1990) describes how, under the rating schedule, degenerative arthritis is to be evaluated:

> Degenerative arthritis **established by X-ray findings** will be **rated on the basis of limitation of motion** under the appropriate diagnostic codes for the specific joint or joints involved (DC 5200 etc.). **When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each major joint or groups affected by limitation of motion, to be combined, not added under diagnostic code 5003. Limitation of motion must be objectively confirmed by** findings such as swelling, muscle spasm, or **satisfactory evidence of painful motion.** In the absence of limitation of motion, rate as below:
>
> 20 percent:
>
> With X-ray evidence of involvement of 2 or more major joints or two or more minor joint groups, with occasional incapacitating exacerbation.
>
> 10 percent:
>
> With X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups.

(Emphasis added.) Section 4.71a first provides a rating for actual (as opposed to

painful) limitation of motion under DC 5200, etc. Since appellant has no actual limitation of motion, this provision does not apply. However, § 4.71a goes on to state that limitation of motion, while noncompensable under the standards contained in DC 5200, etc., may be otherwise compensable on the basis of a 10–percent rating for *each major joint or groups affected* (combined under DC 5003) where there is, among other things, *painful motion*. This reading is reinforced by 38 C.F.R. § 4.59 (1990) which provides in relevant part:

> **With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc. on pressure or manipulation, should be carefully noted and definitely related to affected joints.** Muscle spasm will greatly assist the identification.... The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. **It is the intention to recognize actually painful,** unstable, or maligned joints, due to healed injury, **as entitled to at least the minimum compensable rating for the joint....** The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

(Emphasis added.)

Read together, DC 5003, and § 4.59 thus state that *painful* motion of *a major joint or groups* caused by degenerative arthritis, where the arthritis is established by x-ray, is deemed to be limited motion and entitled to a minimum 10–percent rating, per joint, combined under DC 5003, even though there is no *actual* limitation of motion. As set forth in part I, above, the uncontradicted evidence is that appellant has backaches early in the morning and that she has recurrent arthralgia. (Arthralgia is defined as pain in a joint. *See* Dorland's Illustrated Medical Dictionary 147 (27th ed. 1985)). Thus, the BVA was clearly erroneous in concluding that the lumbar spine had a "full range of motion without pain". *See supra* at 485–86. Accordingly, the BVA incorrectly rated together as one rating the DJD in appellant's spine and right knee. With respect to at least the lumbar spine, this approach is not permitted under § 4.71a which requires a separate rating for painful motion of "each major joint or groups". Hence, based on the evidence presently of record, it appears that appellant would be entitled to a separate rating of no less than 10 percent for her lumbar spine DJD disability.

In regard to the DJD of the thoracic spine, because there is no evidence of pain, the BVA must also consider whether appellant is entitled to a rating under "the absence of limitation of motion" standard contained in § 4.71a.

Lastly, because appellant, as set forth in part II, above, has been awarded service connection for DJD in her right foot, she is also entitled to be rated for it. In evaluating such rating, the BVA must consider the statement of Dr. Sopori that appellant had pain in her right foot and the applicability of a rating under § 4.71a based on, alternatively, limitation of motion by pain or on the absence of limitation of motion.

### IV.

#### Conclusion

For the reasons stated above, the decision of the BVA is reversed and remanded for proceedings consistent with this opinion. In rating these disabilities on remand, the BVA is free to order another examination and appellant, if she so desires, is also free to introduce additional evidence of her disabilities. *Cf. Colvin,* 1 Vet.App. at 174. The Court notes also that the RO and BVA appear to have incorrectly evaluated appellant's degenerative arthritis under DC 5010, the diagnostic code for traumatic arthritis. On remand, the BVA, in determining appellant's separate degrees of disability in her foot and spine, is instructed to evaluate these conditions under DC 5003, the appropriate diagnostic code for degenerative arthritis.

*It is so Ordered.*