**Wilfred E. SMITH, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–478.

United States Court of Veterans Appeals.

Argued Oct. 27, 1994.

Decided Dec. 20, 1994.

Morton Hollander, Bethesda, MD, for the appellant.

Michael P. Leonard, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Rudrendu Sinhamahapatra were on the brief, for appellee.

Before FARLEY, MANKIN, and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from a March 11, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for a chronic low back disorder, denied an increased rating for bilateral hearing loss, and granted a 10% rating for tinnitus. The appellant argues for reversal of the BVA denials and urges the Court to increase the 10% rating for tinnitus to 20% and to grant a January 1972 effective date for that award. The Secretary agrees that the BVA was deficient in failing to fulfill its duty to assist under 38 U.S.C. § 5107(a) and in failing to provide an adequate statement of reasons or bases for its findings and conclusions as required by 38 U.S.C. § 7104(d)(1), but in the Secretary's view, remand rather than reversal is the appropriate remedy. The Court will remand to the BVA the claims for service connection for a low back disorder and for an increased rating for bilateral hearing loss, and will affirm the Board's decision to grant a 10% rating for tinnitus; the Court will decline the appellant's invitation to address his claims for an increased rating and a 1972 effective date for tinnitus.

## I.

The appellant's service in the United States Air Force from January 1968 to Janu-

ary 1972 included service in Vietnam. He reported occasional back pain in service (Record (R.) at 25, 26–30), and the report of his separation physical noted a history of back strain in high school, with recurrences when playing athletics, and some pain, but no other complications or sequelae. R. at 36. The examining physician reported "no pain— neurological OK." R. at 35. A VA examination conducted in February 1972 described the appellant as being "very well developed from the musculature point of view.... Spine shows no abnormal curvatures and there is no loss of range of motion of the spine.... There is no evidence of joint fluid or acute arthritis." R. at 43. The appellant was service connected at 0% for high-frequency hearing loss in March 1972. R. at 51–53.

In January 1992, the appellant sought an increased rating for hearing loss and tinnitus, and, for the first time, service connection for his back problems. R. at 82. He stated that he had hurt his back while trying to haul an ammo box up a ladder into a watch tower in Vietnam (R. at 83, 147), and he submitted evidence from two chiropractors, Dr. Carman and Dr. Camp. Dr. Carman concluded, based upon this history, "It is my opinion that the trauma Mr. Smith described that occured [sic] in 1969 started the degenerative process that resulted in what is presently seen on the x-ray." R. at 76, 86. Dr. Camp found severe degeneration of the lumbar spine and opined that the extent of the degeneration of the appellant's spine appeared to be of "long standing" and "could have begun twenty or so years ago." R. at 111.

With respect to his claim for an increased rating for his hearing loss, a 1991 audiological report noted "moderately severe high frequency sensorineural hearing loss in the [right, *see* R. at 92] ear and a moderately severe to profound high frequency sensorineural hearing loss in the left ear." R. at 88–90. A March 1991 VA audiological examination found a pure tone threshold average of 44 db right ear and 46 db left ear. R. at 104. The appellant complained of tinnitus and attributed it to mortar fire in Vietnam. *Ibid.*

The regional office (RO), in an April 27, 1992, rating decision, denied both an in-

creased rating for hearing loss with tinnitus and service connection for a back disorder. R. at 114–15. At a subsequent hearing (R. at 139–157), the appellant testified that he worked as a mechanic and described how his hearing loss had affected his work. R. at 140. He further explained that his back did not bother him during service after the ammo box incident, but that he did seek chiropractic treatment shortly after service, and that the problem was not obvious until recent years. R. at 148–49. He submitted three statements from high school friends, stating that they were unaware of the appellant's having any back problems from playing football in high school. R. at 133–35.

In its March 11, 1993, decision, the BVA concluded that "[a] chronic low back disorder was not incurred in or aggravated by service, and osteoarthritis of the lumbar spine may not be presumed to have been incurred in service." R. at 5. It dismissed the chiropractors' opinions as "speculative and not supported by medical evidence of record." R. at 7. The BVA also denied an increased rating for hearing loss claim, noting that the empirical evidence did not warrant a compensable rating. R. at 8. However, the BVA did find that tinnitus "is manifested by constant noise in the ears as a result of acoustic trauma in service" and awarded a "separate rating of 10 percent." R. at 5.

As noted, the appellant argues for reversal on the first two issues and for an earlier effective date on the tinnitus issue. The Secretary moves for remand on the back disorder and the increased rating issue and for affirmance of the tinnitus issue.

## II. Low Back Claim

The Secretary argues for a remand of the denial of service connection for the appellant's low back condition because the BVA failed to assist the appellant by obtaining an orthopedic examination pursuant to 38 U.S.C. § 5107(a) and failed to articulate reasons or bases for rejecting the chiropractors' opinions as speculative. The appellant, on the other hand, argues that reversal is the only proper remedy because the chiropractic evidence, the only medical evidence of record, supports the appellant.

■ It is indeed true, as the appellant suggests, that this Court has found reversal to be the appropriate remedy where all of the evidence of record supports an appellant's claim. *See, e.g., Willis v. Derwinski,* 1 Vet.App. 66, 70 (1991) ("On this record, this Court is left with the 'definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948))); *Traut v. Brown,* 6 Vet. App. 495, 500 (1994) (reversal and not remand is appropriate when the record provided no plausible basis for the Board's factual determinations, and all the evidence and competent medical opinion of record supported the appellant's claim). In those cases, however, the supporting evidence was sufficient, in light of the record, to establish conclusively both the nature of the claimant's disability and its service connection. Here, the favorable evidence, the statement of Dr. Carman (R. at 76), establishes neither.

In the first place, it is not possible to determine with precision from Dr. Carman's letter whether his diagnosis of "sciatica secondary to advanced osteo-arthritis degeneration" subsumes traumatic or degenerative arthritis. R. at 76. The distinction can be an important one because traumatic arthritis, where the trauma occurred in service, may be entitled to service connection, whereas arthritis which is degenerative in nature, i.e., due to the natural aging process, and which did not occur during service or become "manifest to a degree of 10 percent or more within one year from the date of separation from such service" (38 U.S.C. § 1112(a)(1)), may not be so entitled. *See, e.g., Yabut v. Brown,* 6 Vet.App. 79, 85 (1993); *Spencer v. Derwinski,* 1 Vet.App. 125, 127 (1991); *see also Lichtenfels v. Derwinski,* 1 Vet.App. 484, 487–88 (1991) (degenerative arthritis initially diagnosed during service held service connected). In stating his opinion that "the trauma Mr. Smith described that occured [sic] in 1969 started the degenerative process," Dr. Carman clouds rather than clarifies the distinction. R. at 76.

Second, and more important, Dr. Carman's diagnosis, even if it is assumed to be premised upon arthritis which is traumatic in origin, is based solely upon what "Mr. Smith described that occurred in 1969." *Ibid.* This is an obvious reference to the statement described in the opening paragraph of Dr. Carman's letter which reports that the appellant "stated that his back pain began after falling while carrying some ammunition in 1969 while in the service." *Ibid.* While neither the Secretary nor the Court questions the appellant's account of his fall, the record does contain other accounts by the appellant of back trauma and pain both before and during his service. *See* R. at 25 (a medical entry on November 1, 1968 states, "[O]cc[asional] low back pain esp[ecially] during athletics"); R. at 36 (a medical examination report entry on January 12, 1972, states, "[L]ow back strain while playing football in high school and several recurrences since during athletics.").

The net result is that Dr. Carman's letter, which is unclear as to the nature of the appellant's condition and premised upon only one of the appellant's varied statements, is simply too thin a reed on this record to compel reversal. A remand will permit further amplification and development of the appellant's claim, including the resolution of any inconsistencies, and will lead to an adjudication premised upon findings of fact and conclusions of law accompanied by a statement of reasons or bases which would, if necessary, permit effective judicial review.

### III. Increased Rating for Bilateral Hearing Loss

The appellant testified before the RO that his job was affected by his hearing loss. R. at 140–41, 151. The record also contains an audiologist's evaluation report which appears to support the appellant's testimony, for the audiologist stated that a person with the appellant's type of hearing loss "hears quite well in one-on-one quiet listening environments but has a tremendous amount of difficulty understanding in the presence of background noise which is present in most day-to-day listening situations." R. at 77. Again, however, there also is inconsistent evidence of record. *See, e.g.,* R. at 100 (audiological examination report which reports that the appellant stated "that his hearing loss has not affected his ability to hold a job ...").

■ Disability ratings are based upon the average impairments of earning capacity, but the governing regulation also establishes a procedure for the referral of exceptional cases for extra-schedular evaluation. *See* 38 C.F.R. § 3.321(b) (1993). In denying the appellant's claim for an increased rating for hearing impairment, the Board properly stated that "[d]isability evaluations are based upon the average impairment of earning capacity as contemplated by the schedule for rating disabilities." R. at 7–8. However, as the Secretary correctly notes, the Board failed to state adequately the reasons or bases for rejecting the appellant's testimony that his hearing loss had a profound effect on his employment, or for its conclusion that referral for an extra-schedular rating pursuant to 38 C.F.R. § 3.321(b)(1) was unwarranted.

The Court agrees with the Secretary that a remand is appropriate in view of the inadequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d); *see also Suttmann v. Brown,* 5 Vet.App. 127, 133 (1993); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). A finding that the appellant's hearing loss has an exceptional impact upon his employment would be too tenuous on this record to warrant or permit reversal. A remand will permit further development of the appellant's hearing loss claim and lead to an adjudication accompanied by a statement of reasons or bases which would, if necessary, permit effective judicial review.

## IV. Tinnitus Claim

■ The essence of judicial review is correction of error. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803) ("It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause."). Although the appellant argues that the BVA erred in failing to mandate a 1972 effective date for its award of 10% for tinnitus and in failing to award a rating of 10% for each ear for a total of 20%, there is no statutory, regulatory, or case authority which requires the BVA to make such determinations. In the absence of such authority, it cannot be said that the BVA erred when it left such determinations to the agency of original jurisdiction in the first instance.

As to the appellant's argument for an earlier effective date and his reliance upon 38 U.S.C. § 5110(b)(1) and 38 C.F.R. § 3.400(b)(2) (1993), it is true that both the statute and the regulation establish the criteria for determining the effective date of an award, but neither placed a legal obligation upon the BVA to make such determinations when it awards service connection. While the BVA is empowered to make such determinations, it also may leave them to the agency of original jurisdiction. *See* 38 U.S.C. § 7104(a). Indeed, if any additional development is required, there is a regulation, 38 C.F.R. § 19.9 (1993), which would appear to require remand: "When, during the course of review, it is determined that further evidence or clarification of the evidence ... is essential for a proper appellate decision, the Section of the Board *shall remand* the case to the agency of original jurisdiction." (Emphasis added).

In the interest of completeness, the Court notes that our holding that the BVA did not commit legal error in refusing to award a 1972 effective date or a 20% rating for tinnitus should not be construed as having any bearing upon the substantive merits of these issues. That the BVA was not under a legal duty to address them does not mean that the appellant would be barred from raising them anew before the agency of original jurisdiction. Indeed, at oral argument, counsel for both parties indicated that the appellant has followed that route.

## V.

On consideration of the record and the pleadings and arguments of the parties, the Court vacates in part the Board's March 1993 decision and remands to the BVA the claim for service connection for a low back disorder and the claim for an increased rating for bilateral hearing loss for readjudication in accordance with this opinion. The Court affirms the Board's decision regarding the claim for tinnitus.

AFFIRMED IN PART; VACATED AND
REMANDED IN PART.