Citation Nr: 1719084 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 13-26 779 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to an evaluation in excess of 10 percent for left knee degenerative joint disease (DJD) with limitation of extension.

2. Entitlement to an evaluation in excess of 10 percent for left knee status post meniscectomy.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The appellant and his spouse

ATTORNEY FOR THE BOARD

J. Juliano, Counsel


INTRODUCTION

The Veteran served on active duty from July 1943 to March 1946.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2012 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona that granted service connection for left knee DJD with limitation of extension and assigned a 10 percent rating, and for a left knee status post meniscectomy and assigned a 10 percent rating.

In November 2016, the Veteran testified before the undersigned Veterans Law Judge at a Travel Board hearing at the RO in Phoenix, Arizona. A transcript of the proceeding is associated with the claims file.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.


FINDINGS OF FACT

1. For the period prior to November 15, 2016, the Veteran's left knee DJD with limitation of extension manifested by objective evidence of flexion limited to 125 degrees, extension to 10 degrees, and arthritis confirmed by x-rays; there is no objective evidence of ankylosis or instability.

2. From November 15, 2016, the Veteran's left knee DJD with limitation of extension is manifested by objective evidence of flexion limited to 125 degrees, extension to 20 degrees, and arthritis confirmed by x-rays; there is no objective evidence of ankylosis or instability.

3. The Veteran's left knee status post meniscectomy is assigned the maximum schedular rating, 10 percent (DC 5259), for the entire period on appeal.


CONCLUSIONS OF LAW

1. For the period prior to November 15, 2016, the criteria for an evaluation in excess of 10 percent for left knee DJD with limitation of extension are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5261 (2016).

2. From November 15, 2016, the criteria for an evaluation of 30 percent for left knee DJD with limitation of extension are met, but no more. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5261 (2016).

3. The Veteran's left knee status post left knee meniscectomy is no more than 10 percent disabling. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5259 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000 (VCAA)

With regard to the Veteran's claim, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5102, 5103(a), 5103A, 5106 (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2016).

The Board finds that because the claims herein all involve downstream issues involving initial ratings, the claims were all substantiated, and there is no further duty to notify the Veteran. Therefore, any defect as to 38 U.S.C.A. § 5103(a) notice is nonprejudicial. See, e.g., Dingess v. Nicholson, 19 Vet. App. 473, 490-491 (2006).

The Board also concludes that VA's duty to assist has been satisfied. The Veteran's VA treatment records and private treatment records are all in the claims file. The Veteran has at no time referenced outstanding records that he wanted VA to obtain.

VA's duty to assist includes the duty to conduct a thorough and contemporaneous examination of the Veteran. Green v. Derwinski, 1 Vet. App. 121, 124 (1991). Where the evidence of record does not reflect the current state of a veteran's disability, a VA examination must be conducted. See Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991); 38 C.F.R. § 3.327(a) (2016).

The Veteran was provided with VA examinations relating to his claim in May 2012 and December 2016. The Board finds the VA examinations to be thorough and adequate upon which to base a decision on the claims. The examiners personally interviewed and examined the Veteran and provided the information necessary to evaluate the Veteran's disabilities under the applicable rating criteria. The Board has considered that the symptoms shown in the May 2012 VA examination report are worse than those shown in the December 2016 VA examination report and ultimately, the Board will defer to those worse symptoms shown in the May 2012 VA examination report for the entire period on appeal. The Board adds that the Veteran's credible testimony one month prior at the Board hearing in November 2016 was sufficient upon which to base a decision on the claim and to award a higher rating, as explained in greater detail below. Therefore, a remand for a new VA examination would only serve to unduly delay a final decision and award of a higher rating in this case involving a World War II Veteran.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

II. Analysis

Disability evaluations are determined by comparing a veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2016). When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7 (2016). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3 (2016). When the evidence is in relative equipoise, the veteran is accorded the benefit of the doubt. See 38 U.S.C.A. § 5107(b) (West 2014). 

A veteran's entire history is reviewed when making a disability determination. 38 C.F.R. § 4.1 (2016). When a veteran timely appeals an initial rating for a service-connected disability within one year of the rating decision, VA must consider whether the veteran is entitled to "staged" ratings to compensate him for periods of time since the filing of his claim when his disability may have been more severe than others. Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran's left knee DJD with limitation of extension is currently assigned a 10 percent rating under Diagnostic Code 5261, effective November 17, 2011. His left knee status post meniscectomy is assigned a separate 10 percent rating under Diagnostic Code 5259, effective November 17, 2011. The Veteran seeks higher initial ratings.

Diagnostic Code 5260, leg, limitation of flexion, provides for evaluations as follows: flexion limited to 60 degrees (0 percent); flexion limited to 45 degrees (10 percent); flexion limited to 30 degrees (20 percent); and flexion limited to 15 degrees (30 percent). 38 C.F.R. § 4.71a (2016).

Diagnostic Code 5261, leg, limitation of extension, provides for evaluations as follows: extension limited to 5 degrees (0 percent); extension limited to 10 degrees (10 percent); extension limited to 15 degrees (20 percent); extension limited to 20 degrees (30 percent); extension limited to 30 degrees (40 percent); extension limited to 45 degrees (50 percent). 38 C.F.R. § 4.71a, Diagnostic Code (2016).

Separate ratings under Diagnostic Code 5260 and 5261 for limitation of flexion and extension, respectively, may be assigned for disability of the same joint and would not constitute pyramiding (if both are compensable). See VAOPGCPREC 9-04 (2004).

For VA purposes, normal range of motion of the knee joint is from 0 degrees extension to 140 degrees flexion. 38 C.F.R. § 4.71, Plate II (2016).

Diagnostic Code 5257, knee, other impairment, provides for evaluation of recurrent subluxation or lateral instability of the knee as 10 percent disabling when slight, a 20 percent when moderate, and 30 percent when severe. 38 C.F.R. § 4.71a (2016).

The VA General Counsel has held that a veteran who has arthritis and instability of the knee may be rated separately under Diagnostic Codes 5003 and 5257. See VAOPGCPREC 23-97 (1997); VAOPGCPREC 9-98 (1998). In VAOPGCPREC 9-98, the VA General Counsel further explained that when a veteran has a knee disability evaluated under Diagnostic Code 5257, to warrant a separate rating for arthritis based on x-ray findings, the limitation of motion need not be compensable under Diagnostic Code 5260 or 5261; rather, such limited motion must at least meet the criteria for a zero-percent rating. 64 Fed. Reg. 52,376 (1999). A separate rating for arthritis (in addition to Diagnostic Code 5257) could instead be based on x-ray findings and painful motion under 38 C.F.R. § 4.59. See Lichtenfels v. Derwinski, 1 Vet. App. 484, 488 (1991).

Diagnostic Code 5258, cartilage, semilunar, dislocated, provides a 20 percent rating for frequent episodes of locking, pain, and effusion. 38 C.F.R. § 4.71a (2016).

Diagnostic Code 5259, cartilage, semilunar, removal, symptomatic, provides for a 10 percent rating. 38 C.F.R. § 4.71a (2016).

In VAOPGCPREC 9-98, VA's General Counsel noted with respect to Diagnostic Code 5259 that removal of semilunar cartilage or meniscus may result in loss of motion. As such, it may constitute pyramiding to award a rating for limitation of motion as a symptom of cartilage removal under Diagnostic Code 5259, and also rate that same limitation of motion under Diagnostic Codes 5260 or 5261. Nevertheless, there will be circumstances when multiple symptoms result from the cartilage removal. If limitation of motion as well as other symptoms result from cartilage removal, it would not be pyramiding under Esteban or 38 C.F.R. § 4.14 to award separate ratings by rating the limitation of motion under Diagnostic Codes 5260 or 5261, and the other symptoms under Diagnostic Code 5259.

When evaluating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. See DeLuca v. Brown, 8 Vet. App. 202 (1995). Further, 38 C.F.R. § 4.45 provides that consideration also be given to weakened movement, excess fatigability, and incoordination.

A May 2012 VA examination report shows that the Veteran reported left knee instability and occasional falls. The examiner noted a history after service of having a medial meniscectomy in 1946. The Veteran reported daily pain, worse with standing and stairs. It was noted that the Veteran had no other injuries. The Veteran reported no flare-ups. Range of motion testing revealed flexion to 125 degrees, and extension to 10 degrees, including after repetitive use testing. Objective evince of painful motion was found. No functional loss due to weakness or weakened movement, excess fatigability, or incoordination was found. The examiner noted that the Veteran experienced functional loss involving limitation of motion due to painful motion. Anterior instability testing (Lachman test), posterior instability testing (posterior drawer test), and medial-lateral instability testing (valgus/varus testing) was all normal. No evidence of patellar subluxation or dislocation was found. The examiner noted that the Veteran had a history of a left meniscal tear, and underwent a meniscectomy in 1946, and that the Veteran had DJD as a result of the meniscectomy, and frequent episodes of joint pain. No joint effusion was found. The Veteran was noted as using an elastic brace for his knee. X-rays revealed arthritis, but no evidence of patellar subluxation. The examiner opined that the Veteran's left knee condition would affect the Veteran's ability to work in that he would have to avoid prolonged standing and stairs.

The Board also acknowledges a December 2016 VA examination report that was performed for purposes of examining the Veteran's right knee, but that also includes some findings involving his service-connected left knee. While the Board acknowledges that the VA examiner noted that the Veteran's left knee had full range of motion, including after repetitive use testing, and including no evidence of pain with weight-bearing, that joint stability testing was all normal (Lachman, Posterior drawer, valgus/varus), he had no other left knee symptoms, his knee symptoms did not impact his ability to work, and that the Veteran goes square dancing, again, the Board is aware that the focus of that December 2016 VA examination was his right knee, and having compared that report to the May 2012 VA examination report as well as the March 2014 VA orthopedic report and the November 2016 Board hearing testimony (discussed below), the Board is ultimately more persuaded by the findings shown in May 2012 and March 2014, and by the Veteran's reported symptoms at the Board hearing.

At the November 2016 Board hearing, the Veteran testified that his left knee disability had worsened since the last VA examination. The Veteran was observed at the Board hearing demonstrating significant limitation of extension of what appeared to be up to 20 degrees. He testified that he falls at times because he is unable to get his foot over the curb, which indicates considerable limitation of extension.

The Board has also considered a December 2014 DBQ pertaining to an unrelated claim that shows the clinician noted that the Veteran has arthritis in both knees, and that he wears braces and experiences some limited ambulation due to pain and limitation of motion (albeit degrees of motion were not described). A later December 2016 DBQ, again pertaining to an unrelated claim, shows the Veteran was noted as having worse knee pain, difficulty walking far distances and managing stairs, and requiring the use of a walking aid.

The Board notes that it has reviewed all of the Veteran's VA treatment records. None of these records, however, show any symptoms more severe than those noted above. A March 2014 VA orthopedic record does show that the orthopedic physician noted the Veteran reported chronic left knee pain related to severe tricompartmental osteoarthritis, with severe medial joint space narrowing and genu varum seen on x-rays. Examination revealed full range of flexion, and extension to 10 degrees. A left medial unloader hinged knee brace to correct the genu varum was ordered. See CAPRI, p.385 of 475.

Prior to the Board hearing on November 15, 2016, with regard to the 10 percent rating for left knee DJD, the Board finds that the preponderance of the evidence is against finding that the Veteran's symptoms met or approximated the criteria for a higher rating under Diagnostic Code 5261. As shown above, the Veteran's left knee DJD manifested by limitation of extension to 10 degrees on VA examination in May 2012, and on evaluation by VA orthopedics in March 2014, and manifested by pain and painful motion, all of which are already contemplated by the current 10 percent rating for left knee DJD. The next higher 20 percent rating criteria contemplate limitation of extension to 15 degrees, which was not shown.

Beginning on November 15, 2016, the Board finds that the criteria for a higher 30 percent rating under Diagnostic Code 5261 have been met. As shown above, the Veteran testified at the Board hearing that his left knee had worsened since the May 2012 VA examination, and that he was experiencing falls due to being unable to lift his foot onto a curb (not due to instability). The hearing record reflects that he was observed as demonstrating significant limitation of extension as much as 20 degrees, which meets the 30 percent rating criteria under Diagnostic Code 5261. 

The Board has considered whether entitlement to the higher 30 percent rating under Diagnostic Code 5261 is shown at any other date prior to the November 2016 Board hearing. Unfortunately, there was no prior evidence, objective or subjective, lay or medical, of limitation of extension to 20 degrees or otherwise of any similar manifestations prior to the date of the hearing. Rather, as shown above, the Veteran was shown to have extension to 10 degrees in May 2012, and again in March 2014.

With regard to the separate 10 percent rating for the left knee status post meniscectomy, the Board notes that the Veteran is presently assigned the maximum schedular rating under Diagnostic Code 5259, semilunar, removal of, symptomatic. Therefore, a higher schedular rating is not warranted under that code.

The Board has considered whether a separating rating is warranted for instability or subluxation under Diagnostic Code 5257, recurrent subluxation or lateral instability, in light of the Veteran's statements regarding instability of the left knee. A 10 percent rating under Diagnostic Code 5257 requires a finding of slight recurrent subluxation or lateral instability. For the entire period of the appeal, however, there are no objective findings of instability, other than his unconfirmed reports. No instability was revealed on objective examination in May 2012 (or in December 2016). Although the Board finds that the Veteran's reports as to his left knee feeling unstable to be competent statements, the Board is more persuaded by the results of various joint stability tests, including the Anterior instability testing (Lachman test), posterior instability testing (posterior drawer test), and medial-lateral instability testing (valgus/varus testing). See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Results of such joint stability tests were normal and did not show any objective findings of instability. Furthermore, DeLuca factors do not apply because Diagnostic Code 5257 does not pertain to limitation of motion. Johnson v. Brown, 7 Vet. App. 95 (1994). In sum, the medical evidence, as prepared by skilled examiners, is more probative than the lay evidence. Thus a separate rating under DC 5257 is not warranted.

The Board has considered whether the Veteran would be entitled to a higher or separate rating under any other diagnostic code. The Board notes a separate rating under Diagnostic Code 5260 would only be permitted where limitation of flexion was compensable, which is not the case herein because no limitation of flexion to 45 degrees is shown. See VAOPGCPREC 9-04 (2004). As the evidence does not show ankylosis of the left knee (DC 5256), dislocated semilunar cartilage with frequent episodes of "locking," pain, and effusion in the joint (DC 5258), impairment of the tibia or fibula (DC 5262), or genu recurvatum (DC 5263) at any point during the appeal period, an evaluation under these codes is not warranted. The Board emphasizes that although the Veteran was shown in March 2014 to have genu varum (bowing or bowleg), that is different than genu recurvatum (hyperextension or back knee). See 38 C.F.R. § 4.71a; see also Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

With regard to the DeLuca factors, the Board finds there is no objective evidence of record reflecting that the Veteran experiences additional functional loss or limitation of motion due to symptoms such as pain, weakness, weakened movement, excess fatigability, or incoordination requiring a higher rating. The Veteran's daily pain and painful motion are already contemplated by the currently staged ratings. See DeLuca v. Brown, 8 Vet. App. 202, 205 (1995); Mitchell v. Shinseki, 25 Vet. App. 32 (2011) (holding that in rating limitation of motion outside of the context of Diagnostic Code 5003, painful motion alone may not be deemed limitation of motion). Therefore, the Board concludes that the greater weight of evidence is against assigning higher evaluations.

The Board has considered whether referral for an extraschedular rating is appropriate. "The determination of whether a claimant is entitled to an extraschedular rating under 38 C.F.R. § 3.321(b) is a three-step inquiry. . . The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." Thun v. Peake, 22 Vet App 111, 115 (2008) (citing Fisher v. Principi, 4 Vet.App. 57, 60 (1993), and Floyd v. Brown, 9 Vet.App. 88, 95 (1996)). "Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. . .[I]f the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required." Thun at 115.

With respect to the first prong of Thun, the Board finds that the evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for the Veteran's left knee disability are inadequate. A comparison between the level of severity and symptomatology of the Veteran's left knee disability, including his limitation of extension to 10 degrees in May 2012 and March 2014, and then later to 20 degrees in November 2016, as well as his history of a meniscectomy, with the established criteria shows that the rating criteria squarely contemplate such limitation of motion and cartilage removal. As explained above, these ratings also contemplate pain and painful motion. As such, an extraschedular rating is not appropriate.

Therefore, in summary, the Board concludes that for the period prior to November 15, 2016, the preponderance of the evidence is against assigning a rating in excess of 10 percent for left knee DJD; from November 15, 2016, a higher 30 percent rating for left knee DJD is warranted, but no more; and for the entire period on appeal, the preponderance of the evidence is against assigning a rating in excess of 10 percent for left knee status post meniscectomy.

ORDER

For the period prior to November 15, 2016, entitlement to an evaluation in excess of 10 percent for left knee DJD with limitation of extension is denied.

From November 15, 2016, entitlement to an evaluation of 30 percent for left knee DJD with limitation is granted.

Entitlement to an evaluation in excess of 10 percent for left knee status post meniscectomy is denied.



____________________________________________
H.N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs