Citation Nr: 1755112 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 12-03 902 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUE

Entitlement to a rating in excess of 10 percent for a left knee disability.


ATTORNEY FOR THE BOARD

C. Davidoski, Associate Counsel


INTRODUCTION

The Veteran had active military service from September 1996 to February 2004.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Jackson, Mississippi Regional Office (RO) of the Department of Veterans Affairs (VA). 

This case was previously before the Board in July 2015. At that time, the Board remanded the Veteran's claim for an increased rating for his left knee disability for further development. A separate claim for entitlement to service connection for a right knee disability was also remanded at that time, as the Board determined that the Veteran had not yet perfected his appeal on that issue.


FINDINGS OF FACT

1. The Veteran's left knee disability does not result in flexion functionally limited to 45 degrees or less; extension functionally limited to 10 degrees or more; ankylosis; removed or dislocated meniscus causing locking; an impairment of the tibia and fibula; or genu recurvatum.

2. Slight lateral instability in the Veteran's left knee has been shown.


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 10 percent for a left knee disability based on range of motion have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.1, 4.2, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5256, 5258, 5259, 5260, 5261, 5262, 5263 (2017).

2. The criteria for a separate 10 percent rating for left knee instability have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.1, 4.2, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist
 
Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). In this case, required notice was provided, and the Veteran has not alleged or demonstrated any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 556 U.S. 396 (2009). Thus, adjudication of his claim at this time is warranted. 

Under 38 U.S.C. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining that evidence which is necessary to substantiate his claim. All service treatment records, VA treatment records, and private medical treatment records identified by the Veteran have been obtained. Furthermore, VA offered the Veteran an opportunity to present testimony before the Board at a hearing, but he withdrew his request to do so prior to the hearing being held. 

The Veteran was also provided with VA examinations in September 2016, May 2013, August 2012, and November 2008, and the Veteran has not objected to the adequacy of any of the examinations conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011) (holding that although the Board is required to consider issues independently raised by the evidence of record, the Board is still "entitled to assume" the competency of a VA examiner and the adequacy of a VA opinion without "demonstrating why the medical examiners' reports were competent and sufficiently informed"). 

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

II. Increased Rating

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

In February 2004, the Veteran initially filed for service connection for a left knee disability. Service connection was granted by a rating decision in November 2004, with an effective date as of the date the claim was received in February 2004. The Veteran was assigned a noncompensable rating, for which he timely a notice of disagreement. The RO issued another rating decision in December 2005, increasing the Veteran's initial rating for his left knee disability to 10 percent, based on painful limitation of motion pursuant to 38 C.F.R. § 4.59. The Veteran never perfected an appeal on these initial rating decisions. 

The Veteran filed a claim for an increased rating for his left knee disability in October 2008. In a December 2008 rating decision, the RO denied the claim and continued the 10 percent rating. This appeal ensued. 

Diagnostic Code 5260 provides ratings based on limitation of flexion of the leg. Flexion of the leg limited to 60 degrees warrants a noncompensable rating. Flexion of the leg limited to 45 degrees warrants a 10 percent rating. Flexion of the leg limited to 30 degrees warrants a 20 percent rating. Flexion of the leg limited to 15 degrees warrants a 30 percent rating. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Diagnostic Code 5261 provides ratings based on limitation of extension of the leg. Extension of the leg limited to 5 degrees warrants a noncompensable rating. Extension of the leg limited to 10 degrees warrants a 10 percent rating. Extension of the leg limited to 15 degrees warrants a 20 percent rating. Extension of the leg limited to 20 degrees warrants a 30 percent rating. Extension of the leg limited to 30 degrees warrants a 40 percent rating. Extension of the leg limited to 45 degrees warrants a 50 rating. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

The standardized description of joint measurements is provided in Plate II under 38 C.F.R. § 4.71. Normal extension and flexion of the knee is from 0 to 140 degrees. 

Separate ratings under Diagnostic Code 5260 for limitation of flexion of the leg and Diagnostic Code 5261 for limitation of extension of the leg may be assigned for disability of the same joint, but separate compensable pathology must be shown. VAOGCPREC 9-2004.

Regarding joint instability, under 38 C.F.R. § 4.71a, Diagnostic Code 5257, a 10 percent rating is warranted for slight recurrent subluxation or lateral instability. A 20 percent rating is warranted for moderate recurrent subluxation or lateral instability. Id. A 30 percent rating is warranted for severe recurrent subluxation or lateral instability. Id.

Other diagnostic codes relating to the knee are Diagnostic Code 5256 for ankylosis, Diagnostic Codes 5258 and 5259 for symptomatic dislocation or removal of semilunar cartilage (synonymous with the meniscus), Diagnostic Code 5262 for impairment of tibia and fibula, and Diagnostic Code 5263 for genu recurvatum. Those conditions are not shown on examination, or in the medical evidence of record, and the Board finds that application of these diagnostic codes is not warranted. 38 C.F.R. § 4.71a.

At a November 2008 VA examination, the Veteran complained of having left knee pain at level of 7 out of 10 since having a left knee arthroscopy in service in 2002. He reported the pain as a dull aching pain which usually began in the morning and lasted until he would lie down at night. He admitted to having left knee flare-ups, which he described as his left knee occasionally swelling with erythema and heat. Flare-ups would begin with a sharp stabbing pain in the left knee following stress to the left knee. During a flare-up, his pain intensified to 8 out of 10, occasionally to 9 out of 10. He claimed flare-ups occurred once a month. They were usually precipitated by twisting, causing a loud pop in the knee followed by swelling, heat, and erythema. The examiner noted that the Veteran's most recent left knee X-ray showed mild degenerative arthritis of the left knee.

On physical examination, the examiner noted that all measurements were obtained following repetitive range of motion times three. The examiner stated that there was no effusion or erythema and there was no heat. The Veteran complained of slight pain at the inferior ridge of the left patella. Flexion of the left knee was to 85 degrees with endpoint pain, extension was to 0 degrees. The examiner reported that the Lachman's sign was negative, and there was no medial lateral collateral ligament laxity. Anterior-posterior drawer signs were also negative, as was the McMurray sign. The examiner also stated that there was no medial lateral joint line tenderness, the Grind test was negative, there was no genu varum, genu valgus, or genu recurvatum, and the left knee was stable.

At an August 2012 VA examination, the Veteran reported wearing a left knee brace regularly, having pain with twisting and turning, and having grinding and popping in the knee. The Veteran reported flare-ups impacted his twisting and bending of the left knee. The examiner noted that the Veteran had diagnoses of degenerative joint disease and chondromalacia patella in his left knee.

On physical examination, range of motion measurements for the left knee showed flexion limited to 100 degrees, with painful motion starting at 80 degrees. Left knee extension was neither limited nor painful. Repetitive use testing showed flexion limited to 100 degrees. Joint stability tests (Lachman tests) were normal for anterior, posterior, and medial lateral instability of the left knee. The examiner noted that the Veteran had functional impairments of his left knee, listed as less movement than normal and pain on movement. There was tenderness or pain to palpation for joint line or soft tissues of the left knee. Muscle strength testing showed normal strength in the left knee on both flexion and extension. The examiner reported that the Veteran had no history of recurrent patellar subluxation or dislocation, any tibial or fibular impairments, any meniscal conditions or prior meniscal surgeries, or any joint replacement in the left knee. The examiner also reported that the Veteran constantly used a left knee brace to assist with locomotion and that the Veteran's left knee disability did not impact his ability to work.

At a May 2013 VA examination, the Veteran reported knee weakness, popping, swelling, and giving away once a month without locking or stiffness. The Veteran reported flare-ups with sharp pain at a level of 7-8 out of 10, lasting about 20 minutes. He said he could not stand or walk for more than five minutes or kneel more than 15-25 seconds. 

On physical examination, left knee range of motion measurements showed flexion limited to 100 degrees, with painful motion starting at 90 degrees. Extension was neither limited nor painful. Repetitive use testing showed flexion limited to 100 degrees. Joint stability tests were normal for anterior, posterior, and medial lateral instability of the left knee. The examiner noted that the Veteran had functional impairments of his left knee, listed as less movement than normal, pain on movement, and swelling. There was tenderness or pain to palpation for joint line or soft tissues of the left knee. Muscle strength testing showed normal strength in the left knee on both flexion and extension. The examiner reported that the Veteran had no history of left knee recurrent patellar subluxation or dislocation, any tibial or fibular impairments, any meniscal conditions or prior meniscal surgeries, or any knee joint replacement. The examiner also reported that the Veteran constantly used a left knee brace to assist with locomotion. The examiner stated that the Veteran's left knee disability did impact his ability to work in that he could not do employment which involved prolonged standing or walking, but he was able to do sedentary work. 

At a September 2016 VA examination, the Veteran reported left knee flare-ups, which he described as grinding, swelling, and popping. He also reported having functional impairment due to his left knee, which he described as pain and limited movement.

On physical examination, range of motion measurements for the left knee showed flexion was limited to 105 degrees and painful. Extension was not limited, but was noted as painful. There was evidence of pain with weight bearing, but no evidence of crepitus. There was no objective evidence of localized tenderness or pain on palpation of the right knee joint or associated soft tissue. Repetitive use testing showed flexion limited to 95 degrees, caused by pain and lack of endurance, but there was no further limitation on extension. The Veteran was not examined immediately after repetitive use over time, but the examiner found that the examination was medically consistent with the Veteran's statements describing functional loss with repetitive use over time. The examiner stated that pain and lack of endurance did significantly limit functional ability with repeated use over a period of time, such that flexion was further limited to 85 degrees. The Veteran was not examined during a flare up, but the examiner found that the examination was medically consistent with the Veteran's statements describing functional loss during flare ups. The examiner stated that pain and lack of endurance did significantly limit functional ability with flare ups, such that flexion was further limited to 80 degrees. Additionally, the examiner noted that less movement than normal and interference with standing were further contributing factors of disability. Muscle strength testing showed normal strength in the left knee on both flexion and extension and no muscle atrophy. The examiner reported that the Veteran had no ankylosis of the left knee, and no history of left knee recurrent subluxation, lateral instability, or recurrent effusion. Joint stability tests were normal for anterior, posterior, medial, and lateral instability of the left knee. The examiner noted that the Veteran had no history of recurrent patellar dislocation, any tibial or fibular impairments, any meniscal conditions or prior meniscal surgeries, or any left knee joint replacement. The examiner noted that the Veteran had residuals of his 2002 left knee arthroscopy, which were noted as pain and stiffness. The examiner also reported that the Veteran regularly used a left knee brace to assist with locomotion. The examiner also stated that the Veteran's left knee disability did impact his ability to work, in that he had knee pain, stiffness, limited range of motion, difficulty with bending, prolonged standing, walking, or climbing stairs. 

Also of record are VA outpatient treatment records throughout the appeal period, which showed visits for left knee pain. These records provide no indication that the Veteran's left knee symptomatology is now or ever was worse than what has been reflected in the VA examination reports of record. In fact, range of motion measurements in those records were even less inhibited than shown on VA examinations, and the injections the Veteran has been receiving in his left knee for pain were reported as having been very helpful in relieving much of his pain.

The Veteran submitted many lay statements over the course of the appeal, stating that his knee was worsening, as he was experiencing more pain, popping, swelling, and grinding, and stating that he should be given an increased rating for his left knee. He stated multiple times that the knee had been buckling on him, to the point where he almost fell while walking and had to catch himself and that he has to get injections every six months to prevent his knee from buckling on him. 

In view of the above, the Board finds that the Veteran's left knee disability never met the criteria for a rating in excess of 10 percent under any Diagnostic Code or regulation during the appeal period. The Veteran never demonstrated limitation of motion which arose to a compensable rating under Diagnostic Codes 5260 or 5261. The most restrictive range of motion measurements in the Veteran's left knee during the entire period were flexion to 80 degrees and extension to 0 degrees. At these ranges, the Veteran did not even warrant noncompensable ratings for limitation of motion, as his flexion was not limited to 60 degrees or less and his extension was not limited to 5 degrees or more. As such, he also never met the criteria for a compensable rating for his left knee limitation of motion under Diagnostic Code 5260 or 5261. However, pursuant to 38 C.F.R. § 4.59, because the Veteran was noted to experience pain in his left knee on flexion throughout the appeal period, he was always entitled to at least the minimum compensable rating for his left knee, which is 10 percent. 

The Board notes that while separate ratings for limitation of flexion and extension can be given to the same joint, the Veteran never demonstrated sufficient limitation of motion on any range of motion test to support separate compensable ratings under Diagnostic Codes 5260 and 5261, and, thus, is not now, or during any prior time in the appeal period, entitled to separate compensable ratings for limitation of extension and flexion. See VAOPGCPREC 9-04, 69 Fed. Reg. 59990 (2005) (in which VA's General Counsel determined that separate disability ratings could be assigned under Diagnostic Codes 5260 and 5261 for disability of the same joint). 

However, the Board's analysis is not yet complete. With respect to possibility of entitlement to an increased evaluation under 38 C.F.R. §§ 4.40 and 4.45, the Board must consider whether an increased rating could be assigned on the basis of functional loss due to the Veteran's subjective complaints of pain. See DeLuca v. Brown, 8 Vet. App. 202, 204-205 (1995).

In Mitchell v. Shinseki, 25 Vet. App. 32 (2011), the Court clarified that there is a difference between pain that may exist in joint motion as opposed to pain that actually places additional limitation of the particular range of motion. The Court specifically discounted the notion that the highest disability ratings are warranted under Diagnostic Codes 5261 and 5261 where pain is merely evident as it would lead to potentially "absurd results." Id. at 43 (limiting the scope and application of its prior holding in Lichtenfels v. Derwinski, 1 Vet. App. 484 (1991)).

The Board has considered the Veteran's statements about his left knee pain and functional impairment having increased. The Board is required to assess the credibility and probative weight of all relevant evidence. McClain v. Nicholson, 21 Vet. App. 319, 325 (2007). The Veteran is competent to report his left knee symptoms, as these observations come to him through his senses. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). The Board also acknowledges the Veteran's belief that his symptoms are of such severity as to warrant an increased evaluation. 

However, disability ratings are made by the application of a schedule of ratings which is based on average impairment of earning capacity as determined by the clinical evidence of record. Therefore, the Board finds that the medical findings, which directly address the criteria under which the disability is evaluated, are more probative than the Veteran's assessments of the severity of his disability. 

Here, the Veteran has shown and attested to pain and functional limitation in his left knee. However, repetitive motion testing was not shown to cause additional such additional limitation of motion as to suggest that the flexion or extension in the Veteran's knee was functionally limited to a level warranting a compensable rating. Moreover, pain was not shown to occur prior to the stopping points at a compensable range of motion with regard to either flexion or extension. 

The demonstrated functional limitations of motion do not approximate ranges which are required for higher than a 10 percent rating for limitation of motion for the left knee at any time during the appeal period. As stated above, the Veteran does not meet the criteria for a compensable rating under Diagnostic Code 5261 or 5260 and his functional limitations do not limit his motion to compensable degrees. Regarding limitation of motion for the left knee, the Veteran is currently only entitled to a compensable rating under 38 C.F.R. § 4.59, which allows for a 10 percent rating based on pain on motion when limited ranges of motion do not reach the compensable schedular ratings. 

Regarding the Veteran's left knee instability, clinical testing at the November 2008, August 2012, May 2013, and September 2016 VA examination all concluded that the Veteran's left knee was not found to be productive of any instability or recurrent subluxation, and his muscle strength was never found to be less than normal. 

The Veteran has asserted that he should be entitled to an increased rating for his left knee for symptoms which include knee buckling. The Board acknowledges that the Veteran is competent to report his left knee symptoms, as these observations come to him through his senses. Layno, 6 Vet. App. at 469. The Board also acknowledges the Veteran's belief that his symptoms are of such severity as to warrant an increased evaluation. 

Moreover, in February 2017, the Veteran was fitted for a knee brace, one of the purposes of which was to "improve stability." Given the Veteran's comments and the prescription of a brace, the Board concludes that a 10 percent rating is warranted for slight instability in the Veteran's left knee.

A rating in excess of 10 percent is not warranted under Diagnostic Code 5257, as moderate subluxation or instability or worse has not been shown. Words such as slight, moderate, and severe are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6.
 
Here, the Veteran has complained of some buckling, but clinical testing has consistently found subluxation and instability not to be present upon. As such, the Veteran's statements about his left knee buckling on occasion, and the fact that he uses a knee brace daily, are sufficient to establish slight instability, but not moderate instability or worse. Additionally, in a July 2017 VA treatment record, it was noted that the Veteran had not fallen in the previous twelve months.

Accordingly, the Board finds that a separate 10 percent rating is warranted under Diagnostic Code 5257.


ORDER

A rating in excess of 10 percent for limitation of motion of the left knee is denied.

A separate 10 percent rating for left knee instability is granted, subject to the laws and regulations governing the award of monetary benefits.



____________________________________________
MATTHEW W. BLACKWELDER 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs