﻿Citation Nr: 19172613
Decision Date: 09/19/19 Archive Date: 09/18/19

DOCKET NO. 18-49 964
DATE: September 19, 2019

ORDER

Entitlement to an initial rating of 40 percent, but no higher, for degenerative arthritis of the spine with intervertebral disc syndrome from April 19, 2017, to July 29, 2018, and from August 22, 2018, to March 28, 2019 is granted.

Entitlement to an initial rating in excess of 40 percent for degenerative arthritis of the spine with intervertebral disc syndrome (low back disability) from July 30, 2018 to August 21, 2018, and from March 29, 2019, onward is denied.

Entitlement to an initial compensable rating from April 19, 2017, and in excess of 10 percent from August 22, 2018, for scars associated with the service-connected bilateral inguinal hernia is denied.

Entitlement to service connection for a right shoulder condition, to include as secondary to the service-connected bilateral inguinal hernia is denied.

REMANDED

Entitlement to an initial compensable rating from April 19, 2017, and in excess of 10 percent from October 2, 2018, for bilateral inguinal hernia status post-surgery (bilateral hernia) is remanded.

Entitlement to service connection for a urethral condition, to include as secondary to the service-connected bilateral hernia is remanded.

FINDINGS OF FACT

1. Resolving doubt in favor of the Veteran, the low back disability more nearly approximates forward flexion of 30 degrees due to functional limitations throughout the entire appeal period; neither ankylosis nor incapacitating episodes of total duration of more than 6 weeks in the last 12 months due to IVDS are shown.

2. Prior to August 22, 2018, the Veteran’s scars associated with his hernia were linear and not painful or unstable.

3. After August 22, 2018, the Veteran’s scars associated with his hernia were noted as one painful scar.

4. The preponderance of the evidence of record shows that a right shoulder condition is not related to service nor caused or aggravated by a service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for an initial 40 percent rating, and no higher, from April 19, 2017, to July 29, 2018, and from August 22, 2018, to March 28, 2019, for degenerative arthritis of the spine with intervertebral disc syndrome, have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5237.

2. The criteria for an initial rating in excess of 40 percent from July 30, 2018 to August 21, 2018, and from March 29, 2019, onward, for degenerative arthritis of the spine with intervertebral disc syndrome, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, DC 5237.

3. The criteria for an initial compensable rating from April 19, 2017, and in excess of 10 percent from August 22, 2018, for scars associated with a service-connected hernia have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1-4.16, 4.118, DCs 7804, 7805.

4. The criteria for entitlement to service connection for a right shoulder disability, to include as secondary to a service-connected hernia have not been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Army from December 1990 to August 1991. He also had periods of Active Duty for Training (ACDUTRA) from January 1990 to July 1996.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a February 2018 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

In a September 2018 rating decision, the RO awarded an increased 10 percent evaluation for the Veteran’s scars associated with his service-connected hernia effective from August 22, 2018, and awarded an increased 40 percent evaluation from July 30, 2018, and 20 percent from August 22, 2018, for the Veteran’s low back disability. In an October 2018 rating decision, the RO awarded an increased 10 percent evaluation for the Veteran’s hernia effective October 2, 2018. In a May 2019 rating decision, the RO awarded an increased 40 percent evaluation for the Veteran’s low back disability effective March 29, 2019. As these evaluations were less than the maximum benefit allowed under VA law and regulations, the claims for increased ratings remain on appeal. AB v. Brown, 6 Vet. App. 35 (1993).

Additional VA treatment records and a VA fee-based examination were received after the most recent statement of the case in October 2018. However, the VA treatment records are irrelevant to the issues being decided herein. While the March 2019 VA fee-based examination is relevant to the claim for an increased rating for the Veteran’s low back disability being decided herein, a review of the record shows that the RO has already considered the examination in connection with the Veteran’s claim. See May 2019 rating decision. As such, a remand for RO consideration is unnecessary. See 38 C.F.R. § 20.1304.

A claim for service connection for hearing loss, tinnitus, fibromyalgia, and erectile dysfunction have been raised by the record, but not adjudicated by the Agency of Original Jurisdiction (AOJ). The Veteran and his representative are advised that effective March 24, 2015, VA requires claims to be submitted on a standard application form prescribed by the Secretary. See 38 C.F.R. §§ 3.1(p), 3.155, 3.160. This matter is referred to the AOJ as an intent to file a claim. See 38 C.F.R. § 3.155(b).

Additionally, a June 2019 rating decision issued after implementation of the Appeals Modernization Act (AMA) denied service connection for irritable bowel syndrome. The Veteran has expressed disagreement with that decision in a statement received in August 2019. The Veteran is advised that in order to appeal that decision, he must file a VA Form 20-0995, Decision Review Request, Supplemental Claim; a VA Form 20-0996, Decision Review Request, Higher-Level Review; or a VA Form 10182, Decision Review Request, Board Appeal (Notice of Disagreement), as advised in the letter sent to him on June 24, 2019.

Increased Rating

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

1. Entitlement to an initial rating in excess of 10 percent from April 19, 2017, in excess of 40 percent from July 30, 2018, in excess of 20 percent from August 22, 2018, and in excess of 40 percent from March 29, 2019, onward.

The Veteran seeks a higher rating for his low back disability. For the reasons that follow, the Board finds that a higher rating is warranted.

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). “Although pain may cause a functional loss, pain itself does not constitute functional loss.” Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011) (emphasis in original). Painful motion is deemed to be limitation of motion and warrants the minimum compensable rating for the joint, even if there is no actual limitation of motion. 38 C.F.R. § 4.59; Lichtenfels v. Derwinski; 1 Vet. App. 484, 488 (1991). The provisions of 38 C.F.R. § 4.59 relating to painful motion are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011).

The Board must also consider whether VA examiners have elicited information concerning the “severity, frequency, duration, or functional loss manifestations” of such flare-ups. Sharp v. Shulkin, 29 Vet. App. 26 (2017).

The Veteran’s low back disability is currently rated at 10 percent from April 19, 2017, at 40 percent from July 30, 2018, at 20 percent from August 22, 2018, and at 40 percent from March 29, 2019, under DC 5237. 

Disabilities of the spine (other than IVDS when evaluated on the basis of incapacitating episodes) are to be rated under the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a, DCs 5235-5243. These criteria are to be applied irrespective of whether there are symptoms such as pain (whether or not it radiates), stiffness, or aching in the affected area of the spine, and they “are meant to encompass and take into account the presence of pain, stiffness, or aching, which are generally present when there is a disability of the spine.” 68 Fed. Reg. 51, 454 (Aug. 27, 2003).

Under the General Rating Formula, a 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is assigned where forward flexion of the thoracolumbar spine is to 30 degrees or less, or if there is favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine, while a 100 percent rating is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula. Additionally, any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately under the appropriate diagnostic codes. Id. at Note (1).

Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. 38 C.F.R. § 4.71a, DC 5242, Note (2).

Intervertebral disc syndrome (IVDS) is evaluated under either the General Rating Formula or under the IVDS Formula, whichever results in the higher evaluation when all disabilities are combined. 38 C.F.R. § 4.71a. An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1), Formula for Rating IVDS Based on Incapacitating Episodes.

Under the IVDS Formula for intervertebral disc syndrome, a 10 percent disability rating is warranted when there are incapacitating episodes having a total duration of at least 1 week but less than 2 weeks during the past 12 months. A 20 percent rating is warranted for IVDS with incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months. A 40 percent rating is warranted for incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. A maximum 60 percent rating is warranted for incapacitating episodes having a total duration of at least six weeks during the past 12 months is warranted. 38 C.F.R. § 4.71a, Diagnostic Code 5243. An incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome which requires bed rest prescribed by a physician and treatment by a physician.

Turning to the evidence of record, the Board notes that the Veteran initially underwent a VA fee-based examination for his low back in February 2018. However, the Board finds that the examination is inadequate. While the Veteran reported flare-ups, the examiner did not obtain sufficient information concerning the frequency, duration, or severity of the Veteran’s flare ups, nor did he estimate any additional functional loss due to flare ups. Moreover, the examiner reported that he was unable to say without resorting to mere speculation whether pain, weakness, fatigability, or incoordination caused additional functional loss after repeated use or during flares. As such, the examination is in violation of Sharp and DeLuca. Accordingly, the Board will not consider the findings on the February 2018 examination in rating the Veteran’s disability.

In his March 2018 Notice of Disagreement, the Veteran reported that he has back pain that shoots down his legs and feet and feels like pins.

An April 2018 VA treatment record shows that the Veteran’s lumbar forward flexion was to 8 to 12 degrees; extension was to 12 degrees; right lateral flexion was to 20 degrees; left lateral flexion was to 30 degrees; and left and right rotation was 50 percent impaired.

In July 2018, the Veteran submitted an evaluation by a private examiner, Dr. J.E. On examination, the Veteran’s range of motion of the lumbar spine was as follows: 21 degrees flexion, 9 degrees extension, 8 degrees right lateral flexion, 5 degrees left lateral flexion, 6 degrees right rotation, and 4 degrees left rotation.

The Veteran underwent another VA fee-based examination in August 2018. The Veteran reported daily back pain that radiated down his bilateral legs. The Veteran reported flare-ups and reported that during flare-ups it is so bad that he cannot get up or go to work. The Veteran reported that flare-ups occur 2 to 3 times per week, the severity is an 8 or 9 out of 10, and they last all day. On range of motion testing, his forward flexion was limited to 65 degrees. However, after repetitive use, his forward flexion was limited 55 degrees, and the examiner noted that pain, fatigue, weakness, and lack of endurance caused the additional functional loss. The examiner was unable to say whether pain, weakness, fatigability, or incoordination significantly limited functional ability with flare-ups essentially because such determination could not be made without directly observing function under the flare-up condition. No ankylosis was noted, and the examiner reported that the Veteran had not had any episodes of acute signs and symptoms due to IVDS that required bed rest prescribed by a physician in the last 12 months.

The Veteran submitted a Disability Benefits Questionnaire (DBQ) for his low back completed by a private physician, J.S., in March 2019. The Veteran reported flare-ups, and Dr. J.S. noted that the flares impede the Veteran’s ability to walk, stand, or sit for prolonged periods depending on severity. Dr. J.S. noted that the Veteran experiences weakness, fatigue, and pain on movement. On range of motion testing, the Veteran’s forward flexion was to 45 degrees and combined range of motion was to 120 degrees. There was no additional limitation of motion following repetitive use. Dr. J.S. reported that pain, weakness, fatigability, or incoordination significantly limited functional ability during flare-ups or after repeated use over time. Dr. J.S. estimated the Veteran’s forward flexion to be limited to 15 degrees due to pain and/or functional loss during flares or after repetitive use. No ankylosis was noted. Dr. J.S. noted that the Veteran has had incapacitating episodes during the last 12 months with total duration of at least 2 weeks but less than 4 weeks.

Based on the foregoing, and after considering additional functional loss after repetitive use and during flare ups, the Board finds that a 40 percent rating for the entire appeal period is warranted.

The Veteran’s forward flexion was limited to less than 30 degrees in April and July 2018. Although the August 2018 examination showed that the Veteran’s flexion was limited to 55 degrees after repetitive use, the Veteran described severe and frequent flare ups that lasted an entire day. In the March 2019 DBQ, Dr. J.S. estimated the Veteran’s forward flexion to be limited to 15 degrees during flares, and the flare-ups described by the Veteran were similar to that described at the August 2018 examination. 

Considering these cumulative findings, and affording the Veteran the benefit of the doubt, the Board finds that the functional limitations caused by the DeLuca factors after repetitive use and during flare-ups warrant a finding that the Veteran’s low back disability has more nearly approximated forward flexion to 30 degrees for the entire appeal period. This warrants the assignment of a 40 percent rating for the entire appeal period. 

The Board notes that the August 2018 examination does not fully comport with the Court’s guidance in Sharp. When an examiner states that he or she cannot offer an opinion without resort to speculation, that opinion is adequate only when it is clear that it is predicated on a lack of knowledge among the medical community at large and not the insufficient knowledge of the specific examiner. Sharp, 29 Vet. App. at 36 (quoting Jones v. Shinseki, 23 Vet. App. 382, 390 (2010)).

However, based on the credible lay assertions and objective medical findings regarding the Veteran’s functional limitations upon flares and/or with repeated use over time, the Board will resolve reasonable doubt in his favor to grant a 40 percent rating for the entire appeal period.

The Board declines to grant an even higher rating of 50 percent. This is because there is no clinical evidence of ankylosis per the VA examiner, Dr. J.S., and the medical records. Even with consideration of additional functional loss, the competent evidence does not reflect lumbar spine motion that approximates ankylosis. The Veteran has not asserted otherwise. 

Moreover, a higher rating is also not warranted under the IVDS Formula as there is no evidence of incapacitating episodes having a total duration of at least 6 weeks in the past 12 months.

The Board has considered whether separate ratings are warranted for neurologic impairment. The record shows the Veteran already has been granted service connection for radiculopathy of the left and right lower extremities secondary to his low back disability. The Board acknowledges that the Veteran has reported pain and a pin-like sensation in his bilateral lower extremities. See March 2018 Notice of Disagreement. However, this symptomatology is already contemplated under his rating for bilateral lower extremity radiculopathy. 

In light of the foregoing, and resolving all reasonable doubt in favor of the Veteran, the Board finds that a rating of 40 percent for the Veteran’s low back disability is warranted for the entire appeal period. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3, 4.71a, DC 5237; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

2. Entitlement to an initial compensable rating from April 19, 2017, and in excess of 10 percent from August 22, 2018, for scars associated with the service-connected hernia. 

The Veteran seeks higher initial ratings for his scars associated with his bilateral inguinal hernia. For the reasons that follow, the Board finds that higher ratings are not warranted.

Scars are rated under 38 C.F.R. § 4.118, schedule of ratings for disorders of the skin, under Diagnostic Codes (DC) 7801, 7802, 7804, and 7805. Effective August 13, 2018, the rating criteria for skin disabilities were revised. See 73 Fed. Reg. 32, 592 (July 13, 2018). As this appeal was pending on August 13, 2018, the revised criteria are applicable, but only for the period beginning August 13, 2018.

The Veteran’s scars are rated noncompensable prior to August 22, 2018, under DC 7805 and 10 percent disabling from August 22, 2018, under DC 7804. 

Under the version of the Schedule for Rating Disabilities in effect prior to August 2018, scars were rated under DCs 7800 to 7805.

DC 7800 applied scars or disfigurement of the head, face, or neck. 

DC 7801 applied to burn scars or scars due to other causes, not of the head, face, or neck, that are deep and nonlinear. A minimum 10 percent rating was assigned for an area(s) of at least 6 square inches (30 sq. cm.) but less than 12 sq. inches (77 sq. cm.). A deep scar was associated with underlying soft tissue damage.

DC 7802 applied to burn scars or scars due to other causes, not of the head, face, or neck, that are superficial and nonlinear. A 10 percent rating was assigned for area(s) of 144 sq. inches (929 sq. cm.).

DC 7804 pertains to unstable or painful scars. A 10 percent evaluation is assigned for one or two scars that are unstable or painful. A 20 percent evaluation is assigned for three or four scars that are unstable or painful. A 30 percent evaluation is assigned for five or more scars that are unstable or painful. Note (1): an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2): If one or more scars are both unstable and painful, 10 percent is added to the evaluation that is based on the total number of unstable or painful scars. Note (3): Scars evaluated under diagnostic codes 7800, 7801, 7802, or 7805 may also receive an evaluation under Diagnostic Code 7804, when applicable. 

DC 7805 applies to limitation of function of the affected part and specifically provides: Evaluate any disabling effect(s) not considered in rating provided under diagnostic codes 7800-04 under an appropriate diagnostic code.

Under the post-August 2018 rating criteria, DCs 7800, 7804 and 7805 remain the same. 

DC 7801 was amended to state that burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are associated with underlying soft tissue damage, in an area or areas of at least 6 square inches (39 sq. cm.) but less than 12 square inches (77 sq. cm.) will be assigned a 10 percent rating. Notes (1) and (2) were amended, but not in a manner that is pertinent to this particular case.

DC 7802 was amended to state that burn scar(s) or scar(s) due to other causes, not of the head, face, or neck, that are not associated with underlying soft tissue damage in an area or areas of 144 square inches (929 sq. cm.) or greater will be assigned a 10 percent rating. Notes (1) and (2) were amended, but not in a manner that is pertinent to this particular case.

Turning to the evidence of record, the Veteran initially underwent a VA fee-based examination for his scars in February 2018. A scar was noted on his right lower extremity near the right groin. The scar was reported as linear and .5 centimeters in length. Three scars were reported on the Veteran’s anterior trunk. Each scar was linear and approximately 1 centimeter in length. None of the scars were noted as painful, tender, or unstable.

In his March 2018 Notice of Disagreement, the Veteran reported that his scars from the hernia surgery were itchy.

During a VA fee-based examination for an unrelated condition in August 2018, the Veteran reported a painful, tender scar from his right hernia surgery.

The Veteran underwent another VA fee-based examination for his scars in August 2018. Four scars were noted. One on his right groin and three on his abdomen. The Veteran reported one painful scar with tenderness. The scar on his right groin was noted as linear and 5 centimeters by .2 centimeters. The scars on his abdomen were each noted as linear and .2 centimeters by .1 centimeters.

Based on the foregoing, the Board finds that higher initial ratings are not warranted. Prior to August 22, 2018, the Veteran’s scars manifested only in itchiness. The evidence does not show, and the Veteran has not contended, that any of his scars were painful prior to August 22, 2018. As none of the scars were reported as painful prior to August 22, 2018, a compensable evaluation prior to that date under DC 7804 is not warranted.

The RO assigned a 10 percent rating from August 22, 2018, based on the examination results on that date showing one painful scar. In order to warrant a higher rating under DC 7804 after August 22, 2018, there would need to be three or four scars that are unstable or painful. As the record shows only one painful scar, a rating higher than 10 percent from August 22, 2018, is not warranted. While the Veteran has reported itching associated with his hernia scars throughout the appeal period, the Board finds that such symptom does not more nearly approximate the criteria for a compensable rating prior to August 22, 2018, or rating in excess of 10 percent thereafter. There is no evidence of record to suggest that the itching resulted in any functional limitation. 

Neither the February nor August 2018 examinations showed any limitation of function due to the hernia scars. Thus, a compensable rating under DC 7805 is also not warranted at any time during the appeal period as the there are no disabling effects not already contemplated by DCs 7800-7804.

Moreover, evaluation under DC 7800 is not appropriate because the scars are not of the head, face, or neck. Evaluation under the former DC 7801 or DC 7802 is not appropriate as the scars are not nonlinear. Evaluation also is not warranted under the revised criteria of DC 7801 or DC 7802 as the scars do not meet the minimum area coverage requirements. 

In light of the foregoing, the Veteran’s scars associated with his service-connected hernia have more closely approximated a noncompensable rating prior to August 22, 2018, and a 10 percent rating thereafter. There is no doubt to be resolved; higher initial ratings are not warranted. There are no other issues expressly or reasonably raised by the record.

3. Entitlement to service connection for a right shoulder condition, to include as secondary to the service-connected hernia.

The Veteran seeks service connection for a right shoulder condition. Specifically, he contends that his right shoulder condition is either directly related to an injury sustained in 1997 while serving with the U.S. Army Reserves or secondary to his service-connected hernia.

For the reasons that follow, the Board finds that service connection is not warranted.

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. This means that the facts establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). 

Establishing service connection on a direct basis requires evidence demonstrating (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the claimed in-service disease or injury. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The term “active military, naval, or air service” includes any period of ACDUTRA during which the individual concerned was disabled from a disease or injury incurred or aggravated in line of duty. This term also includes any period of inactive duty for training (INACDUTRA) during which the individual was disabled from an injury incurred or aggravated in line of duty. Thus, a disorder may be service connected if it is shown that it had its onset during a period of ACDUTRA or is related to an injury incurred during a period of ACDUTRA or INACDUTRA.

In addition to service connection on a direct basis, service connection may also be granted for a disability that is proximately due to or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310; see also Allen v. Brown, 7 Vet. App. 439 (1995).

Turning to the evidence of record, VA treatment records show that the Veteran has a current diagnosis of tendinosis and possible anteroinferior labral tear related to his right shoulder. See June 2018 VA treatment record. Accordingly, the first element of service connection, a current disability, has been established.

With regards to the second element of direct service connection, the Veteran contends that he injured his right shoulder in 1997 while employed with the U.S. Army Reserves. See June 2018 VA treatment record; July 2018 private evaluation by Dr. J.E.; August 2018 Informal Conference. Specifically, he contends that he fell out of a military truck while trying to hold some equipment up on the truck. The equipment fell on top of him after he fell out of the truck. See March 2018 Notice of Disagreement. 

The Veteran’s military personnel records show that he had the following periods of ACDUTRA: January 1990 to June 1990; July 1990 to August 1990; July 1993; July 1994; and July 1996. The Veteran also served on active duty from December 1990 to August 1991. There is no indication that the Veteran had any periods of active duty, ACDUTRA, or INACDUTRA at any time in 1997. Thus, the Board finds that the reported injury did not occur during a period of active service.

Moreover, the record does not indicate that the Veteran’s current right shoulder disability is related to any other period of active service. The Veteran’s service treatment records while on active duty from December 1990 to August 1991, or during any period of ACDUTRA, do not indicate any other injury or event that involved the right shoulder, nor has the Veteran asserted any other injury occurred other than the 1997 injury.

Accordingly, as the Veteran’s right shoulder disability was not incurred or aggravated during a period of active duty, ACDUTRA, or INACDUTRA, service connection on a direct basis is not warranted.

Turning to secondary service connection, the Veteran has contended that his right shoulder disability is due to his service-connected hernia. See July 2017 VA 21-526EZ, Fully Developed Claim. However, there is no evidence, beyond this assertion, indicating that the Veteran’s hernia may cause or aggravate his right shoulder disability. Notably, the Veteran submitted an article in August 2019 which describes possible symptoms and complications of hernia surgery. No symptoms or complications related to the right shoulder are identified. The Veteran’s assertion does not rise to the level of an indication of an association. As such, there is no indication of a link between the Veteran’s current right shoulder disability and his service-connected hernia. As such, an opinion on the question of secondary service connection is not necessary and service connection on a secondary basis is not warranted.

Based on the foregoing, service connection for a right shoulder condition is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. at 55-57.

REASONS FOR REMAND

1. Entitlement to an initial compensable rating from April 19, 2017, and in excess of 10 percent from October 2, 2018, for bilateral inguinal hernia status post-surgery.

The Veteran seeks higher ratings for his service-connected hernia.

The Veteran most recently underwent a VA fee-based examination for his service-connected hernia in October 2018. The examiner reported that the Veteran had hernia repair surgery for his right hernia in 1991 and 2016 and had hernia repair surgery for his left hernia in 2016. The examiner reported that the Veteran had a right recurrent hernia that appeared operable and remediable. However, the examiner subsequently reported that no hernia was detected on the right or left on examination. Thus, the examination is internally inconsistent. Accordingly, a remand is warranted to obtain a new examination.

2. Entitlement to service connection for a urethral condition, to include as secondary to the service-connected hernia.

The Veteran seeks service connection for a urethral condition.

VA treatment records show that during the course of this appeal, the Veteran experienced urethral stricture disease. See June 2018 VA treatment record. The Veteran underwent a VA fee-based examination for his urethral condition in August 2018. The examiner reported a diagnosis of history of urinary tract infection and opined that it was less likely than not proximately due to or the result of the Veteran’s service-connected hernia condition. The Board finds this opinion inadequate for two reasons. First, no opinion regarding aggravation was provided. Second, the examiner did not address the diagnosis of urethral stricture disease and whether it was secondary to the service-connected hernia condition. As such, a new opinion should be obtained.

The matters are REMANDED for the following action:

1. Schedule the Veteran for an examination to determine the current severity of his service-connected bilateral inguinal hernia status post-surgery. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria.

2. Obtain a VA medical opinion regarding the etiology of the Veteran’s urethral condition from a qualified medical professional. The need for a physical examination is left to the discretion of the VA examiner. The examiner must review the entire claims file and a copy of this Remand.

The examiner must opine whether it is at least as likely as not that the Veteran’s urethral condition, to include his history of urinary tract infections and/or urethral stricture disease, is caused or aggravated by his service-connected bilateral inguinal hernia status post-surgery. 

The term “aggravation” means a chronic worsening of a disability beyond its natural progression. If aggravation is found, then, to the extent possible, the examiner should establish a baseline level of severity of the urethral condition prior to aggravation by the service-connected bilateral inguinal hernia status post-surgery.

A complete rationale must be provided for all opinions expressed. The rationale must consider and discuss the pertinent evidence of record, to include the Veteran’s lay statements. 

 

 

C. CRAWFORD

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Mortimer, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.